Francis Metal Door & Window Corp. v. Commissioner.
Francis Metal Door & Window Corp. v. Commissioner
Docket No. 9859.
United States Tax Court
1948 Tax Ct. Memo LEXIS 69; 7 T.C.M. (CCH) 755; T.C.M. (RIA) 48211; October 18, 1948
Wm. MacFarland, Esq., 510-520 Union Trust Bldg., Rochester 4 N. Y., for the petitioner. Thomas R. Charshee, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: The Commissioner determined deficiencies in petitioner's income, declared value excess profits, and excess profits taxes for the year 1942 in the following respective amounts of $2,159.98, $8,534.43 and $44,104.18. With the exception of the adjustments associated with the questions hereinafter set forth, all other disagreements between the parties growing out of the deficiency letter have been adjusted. The questions for present consideration are: (1) May this taxpayer deduct from its taxable income for the calendar year 1942 $21,507 which it had charged to its merchandise account and credited to an account called "Reserve for Deferred Salaries" but from which no disbursements were made until June 30, 1943? (2) May this taxpayer deduct from its taxable income for the calendar year 1942 $7,052.86 paid on June 30, 1943, to its president, who was also its landlord, as rent for 1942? (3) May this taxpayer deduct from its taxable income for the calendar *71 year 1942 $31,427.05, representing an accrual of its indebtedness to its president and landlord for rental for years prior to 1942, when no disbursement on said account was made until June 30, 1943? Findings of Fact Petitioner was incorporated in 1919 under the laws of the State of New York. Its income and declared value excess profits tax return, Form 1120, for the calendar year 1942 was duly filed with the collector of internal revenue at Buffalo, New York. Its books are kept and its 1942 return was prepared on the accrual basis. At all times material its capital stock consisted of 354 shares held by members of one family as follows: George E. Francis, Sr.
President and treasurer
270 shares
George E. Francis, Jr.
Vice president and assistant treas-
urer
72 shares
Virginia Francis
12 shares
In March 1924 George E. Francis, Sr., leased to The American Glass and Construction Company, a family corporation having the same officers, directors and stockholders as petitioner, a manufacturing building in Rochester, New York. Petitioner herein also occupied said premises with The American Glass and Construction Company without any written agreement but under the *72 same terms and conditions as that extended to The American Glass and Construction Company by virtue of which occupation rental was to be paid, as follows: "And the said parties of the second part covenant that they will pay to the party of the first part for the use of said premises, the annual rent of six thousand dollars ($6000.00), to be paid quarterly in advance, for the first 5 yr. period, $6600.00 annually the second 5 yr. period, $7200.00 annually the third 5 yr. period and $8000.00 annually the 4th-5 yr. period plus all water rent and repairs and maintenance." From 1931 to 1941, inclusive, petitioner lost money and George E. Francis, Sr. advanced to petitioner a total sum of approximately $116,000 to keep petitioner in business. No part of this amount had been repaid to George E. Francis, Sr., prior to 1943. It was not reflected on petitioner's books as an obligation nor in its balance sheet of December 31, 1942. On January 26, 1936, petitioner's board of directors passed a resolution which, among other things, provided: "RESOLVED, that he [George E. Francis, Sr.] be continued as Managing Director for another five year period, with the hope that during that period *73 a more definite upturn would be visible. "FURTHER RESOLVED, that all deficit in rent and other expenses paid by him be considered as a deferred loan, not recorded in the books and not to be charged against the assets, except in liquidation, but to remain as a charge against any earning made by either or both companies before any dividends are paid from earnings. Also, that should future years earnings be sufficient to do so, all back salaries up to $5,000 per annum should be paid to him after payment of cash dividends of 20% to the stockholders." A memorandum record of unpaid rent called "Deferred Loan due to George E. Francis" was maintained on a ledger page of petitioner's books from 1931 to 1941, inclusive, but the unpaid balance for the years through 1941 was not accrued or reflected in the bookkeeping system. A copy of said memorandum is as follows: Date
Amount
Paid
Debit
1931
$6,600.00
$ 6,600.00 $ 1932
6,600.00
6,600.00
1933
6,600.00
6,600.00
1934
6,600.00
1,250.00
5,350.00
1935
7,200.00
250.00
6,950.00
1936
7,200.00
7,200.00
1937
7,200.00
7,200.00
1938
7,200.00
5,549.75
1,650.25
1939
7,200.00
1,414.52
5,785.48
1940
8,000.00
5,507.54
2,492.46
1941
9,000.00
10,638.05
2,633.05
1942
9,600.00 *
2,547.14
7,052.85
Paid by Amer. Glass & Const. Co.
9,163.09
38,479.91
Date
Credit
1943, June 26
$38,479.91
*74 During the early part of 1942 petitioner succeeded in securing some war contracts with the Navy Department and some subcontracts for war production in the total amount of $544,000. In order to finance the first contract petitioner secured a V revolving loan of $85,000 on May 18, 1942, from the Central Trust Company of Rochester, New York. A relevant provision of the loan agreement follows: "The undersigned covenants and agrees that so long as any part of the Liabilities remains unpaid: * * *
"(d) Except with the prior consent in writing of the Financing Institution: * * *
"(2) The undersigned shall not increase any of the salaries or other compensation of, or withdrawals from the business of the undersigned by, any of its officers or directors, in an amount which the Financing Institution may deem to be substantial; * * *." During 1942 petitioner received from said Central Trust Company advancements aggregating $120,000 and made payments on its loans so that on December 31, 1942, it was still indebted to said trust company in the amount of $77,965.58. In connection with said loan George E. Francis, Sr. and George E. Francis, *75 Jr. entered into a verbal understanding with said trust company that neither would withdraw more than $75 per week on account of salary while the loan to petitioner was unpaid. During that year payments on salary were made as follows: George E. Francis, Sr.
$2,475.00
George E. Francis, Jr.
2,685.00 The unpaid balances of officers salaries for 1942 were credited to an account called "Reserve for Deferred Salaries" and charged to the company's merchandise account, in the books of petitioner on December 31, 1942, in the total amount of $21,507, being $15,482 for George E. Francis, Sr. and $6,025 for George E. Francis, Jr. This method of handling the account was at the instigation of the Central Trust Company. The company books were kept and the income tax return for 1942 was made under the direct control of George E. Francis, Sr. George E. Franci Sr. and George E. Francis, Jr. made their individual income tax returns on the cash basis in the years 1942 and 1943. They did not include in their returns for 1942 the amounts carried on the "Reserve for Deferred Salaries" account. The balance sheet of petitioner as of December 31, 1942, is as follows: Assets
Cash
$ 3,386.49
Notes & Accounts Receivable
103,570.40
Inventories
81,813.50 *
Equipment
21,617.51 **
Reserve for Rejections
5,939.67
Stock - Rochester Civic Corp.
225.00
$216,552.57
Liabilities
Accounts Payable
$ 42,678.73
Notes Payable
77,965.38
Reserve for Bonus
6,406.60
Reserve for Deferred Salaries
21,507.00
Reserve for Deferred Obligations
38,479.91
War Bond Account
232.15
Capital Stock
27,000.00
Surplus
3,282.80
$216,552.57
*76 Disbursements from the reserve for deferred salaries were made on June 30, 1943, and December 31, 1943, in the total amount of $21,507. During 1942 petitioner paid George E. Francis, Sr. as rent $2,547.14 and the balance of the rent due the president for 1942 in the amount of $7,052.86 was first entered in the memorandum account "Deferred loan due to George E. Francis" then entered in the ledger account "Reserve for Deferred Obligations" and was paid to Francis, Sr., in full on June 30, 1943. There was also paid to Francis, Sr. on said date $31,427.05, representing rent due Francis, Sr. for the years 1931 to 1941, inclusive. This amount had been recorded on taxpayer's books in the same way as the unpaid rent for 1942. In its income tax return for 1942 petitioner claimed as a deduction officers' salaries in the amount of $21,507 which it had included in its "Reserve for Deferred Salaries" account. In said return it also claimed as a deduction $7,052.86 *77 and $31,427.05, or a total of $38,479.91, representing rent which it had charged to its merchandise account and credited to an account labeled "Reserve for Deferred Obligations" being the same amount which had previously been carried on the memorandum account above described. Petitioner paid no dividends in 1942. It paid no salary to George E. Francis, Sr. from 1931 to 1941, inclusive, but during 1941 it had paid George E. Francis, Jr. $75 per week. Opinion Petitioner claimed deductions in its 1942 income tax return of amounts which it had set up in 1942 in ledger accounts designated "Reserve for Deferred Salaries, $21,507" and "Reserve for Deferred Obligations, $38,479.91." The Commissioner disallowed said deductions as being contrary to the provisions of section 24 (c), I.R.C., which provides: "SEC. 24. ITEMS NOT DEDUCTIBLE. * * *
"(c) Unpaid Expenses and Interest. - In computing net income no deduction shall be allowed under section 23 (a), relating to expenses incurred, or under section 23 (b), relating to interest accrued - "(1) If such expenses or interest are not paid within the taxable year or within two and one half months after the *78 close thereof; and "(2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and "(3) If, at the close of the taxable year of the taxpayer or at any time within two and one half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24 (b)." We have found as a fact that the actual payments of the amounts set up in the two reserves were not made "within the taxable year or within 2 1/2 months after the close thereof". We find no merit in petitioner's contention that merely because the finances of petitioner corporation were constantly under the dominion and control of George E. Francis, Sr., and Jr., during the taxable year that consequently a situation existed which was tantamount to payment. Even if there were no question about who had control of the corporation during 1942, the statute relates to payment within two and one half months after the close of the taxable year and if *79 control were tantamount to payment, such provision should be in the statute. The petitioner does not dispute in his brief that "the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24 (b)". Therefore, a discussion of section 24 (c) (3) is not necessary in this opinion. The remaining and determining question then in this case is as to whether amounts entered in the reserve accounts as due to George E. Francis, Sr., and George E. Francis, Jr., as salaries for the year 1942, and the amounts entered into the reserve account as being due to Francis, Sr. as rent for 1942, and as accrued rent for years prior thereto, were "includible in the gross income" of George E. Francis, Sr. and George E. Francis, Jr., respectively. If the amounts aforesaid were includible in the respective gross income of these two creditors, petitioner is entitled to the deduction; if not includible, the disallowance by the Commissioner is correct. Fincher Motors, Inc., 43 B.T.A. 673. It is admitted that these amounts were not, as a matter of fact, included in the respective 1942 income tax returns by either of these two *80 men. This does not necessarily require a decision against the petitioner as the test laid down by the statute is whether these amounts were includible in the gross income of these two men who were on the cash basis. They were includible if they were actually or constructively received by them during 1942. They were not actually received, and petitioner's contention is that they were constructively received. Regulations 111, Section 29.42-2 provides: "Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt in such a case the income must be credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition. A book entry, if made, should indicate an absolute transfer from one account to another, * * *" The fact that the two creditors of the taxpayer *81 reported their respective incomes on a cash basis would not prevent credit items "set apart" to them by the taxpayer, who was then financially able to make the payments, without substantial limitation or restriction thereon, from being includible in the gross income of the creditors. See Michael Flynn Manufacturing Co., 3 T.C. 932. It has long been well settled, however, that the doctrine of constructive receipt is to be sparingly applied and only under a clear showing that the situation involved presents all of the required conditions. William H. C. Pletz, 43 B.T.A. 140; Samuel K. Jacobs, 22 B.T.A. 1166. The income involved must be "set apart". In the case before us the alleged "income" was, at some undisclosed time during the taxable year, entered into two reserve accounts where it remained until the close of the taxable year. The recognized purpose of a reserve account is to include items not presently payable but concerning which there is a future probability of liability. To say that the items entered into these reserve accounts were during 1942 "made available" to G. E. Francis and G. E. Francis, Jr., so that they might "be drawn at *82 any time" and their receipt brought within the control and disposition of G. E. Francis and G. E. Francis, Jr., is a direct contradiction of terms in association with the word "reserve". The president of petitioner corporation explains this situation by saying that he told the bookkeeper to create the reserve accounts and that he was not informed as to the intricacies of bookkeeping. However, he also testified that the reserves were set up at the suggestion of the bank from whom petitioner was borrowing money and we believe it is a safe conclusion that the bankers understood exactly the limitations on withdrawals which result from the use of reserve accounts rather than personal ledger accounts which would normally be used to handle debit items which were subject to withdrawals by the creditor at any time. Furthermore, the fact that neither George E. Francis nor George E. Francis, Jr., reported any amounts in their own income tax returns which had been entered on these reserve accounts would indicate that they probably understood the limitations which were imposed upon their own power of withdrawal. It is worthy of note that the regulations controlling constructive receipt include *83 a provision which seems to aptly cover the facts in this case, "a book entry, if made, should indicate an absolute transfer from one account to another." In this case the book entry did not indicate an absolute transfer. It indicated a transfer subject to future contingencies that might or might not exist after the taxable year. The bank in recommending this reserve system of accounting was undoubtedly protecting the provisions of its contract with petitioner, which contract was entered into at the time of the loan to the petitioner. By the terms of that contract the petitioner was prevented from "increasing any of the salaries or other compensation or withdrawals" by the officers of petitioner "so long as any part of the liabilities" to the bank remained unpaid. At the end of 1942 the petitioner was still indebted to the bank in the amount of $77,965.58. George E. Francis and George E. Francis, Jr., were both officers of the corporation. It is obvious therefore that during 1942 no payments on the rental account for years prior to 1942 would be permitted under the contract with the bank and no payments of salary in excess of $75 per week to G. E. Francis, Jr., would be allowed under *84 the written contract. However, under a verbal agreement G. E. Francis, Sr., was permitted to withdraw $75 a week from the date of the loan, which was May 18, 1942. Obviously the contract with the bank, as well as the method of bookkeeping which the bank prescribed for the petitioner, all place restrictions on paying items from this reserve account during 1942. In addition to the above the Commissioner raises a question as to the petitioner having assets in 1942 available to pay the reserve items involved. All of this gets into the realm of speculation and it is our conclusion that the petitioner herein has not produced evidence of sufficient weight to persuade us that during 1942 it could have borrowed, in addition to its current obligations, an amount sufficient to have paid the items set forth in the reserve account. Borrowing capacity alone, even if possessed by the petitioner, would not be controlling of the question of constructive receipt. Northern Trust Co., 8 B.T.A. 685. Decision will be entered under Rule 50. Footnotes
*. Includes lot for 8 months.↩
*. Includes materials processed sufficiently so that the expenditure of $21,000 additional converted them into commodities sold during January and February 1943 for $160,000. ↩
**. Under chattel mortgage to secure notes payable.↩